UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT CLEVELAND MITCHELL III,

        Plaintiff,

Case No. 1:05-cv-203

Hon. Gordon J. Quist

vs.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.

                                      /

**REPORT AND RECOMMENDATION**

Plaintiff has filed a § 1983 civil rights action against defendants. This matter is now before the court on defendants' motion for summary judgment (docket no. 45).[1]

    **I.**    **Background**

Plaintiff's complaint asserts a constitutional challenge to Michigan Department of Corrections (MDOC), Director's Office Memorandum (DOM) 2004-8, which restricts prisoners from having "any books, pamphlets, forms or other material regarding actions that can be taken under the UCC." *See* DOM 2004-8 (March 30, 2004).[2] DOM 2004-8 was issued on March 30, 2004 and remained in effect through December 31, 2004.[3]

---

[1] Plaintiff has filed a document entitled "Plaintiffs' [sic] motion in opposition to defendants MDOC's and Caruso's motion for summary judgment" (docket no. 67). This document has been docketed as a response to defendants' motion for summary judgment and will be considered as such.

[2] MDOC policy "is contained in policy directives and DOMs." MDOC Policy Directive 01.04.110, ¶ E.

[3] *See* MDOC Policy Directive 01.04.110, ¶ N. ("[a] DOM shall be in effect only for the calendar year in which it is issued, but may be renewed each January by the Director").

DOM 2004-8 provided as follows:

Over the past several months, there has been increased activity by prisoners engaging in various schemes involving the Uniform Commercial Code (UCC). This activity is not unique to this Department or to prisoners. These schemes include "copyrighting" names and making demands for money whenever the name is used by another, preparing fraudulent drafts or bills of exchange, and filing fraudulent liens in order to harass staff, prosecutors, judges and others. Such activity by prisoners within the Department is clearly harassment and, in many cases, a felony.

Effective immediately, prisoners are no longer authorized to have any books, pamphlets, forms or other material regarding actions that can be taken under the UCC; these materials shall be considered contraband since they can be used to facilitate criminal activity and pose a risk to the custody and security of the facility. (This does not include publications in the law library, such as Michigan Compiled Laws Annotated, that set forth the statute or provide a scholarly legal analysis of the UCC.) Often times, the material received by or from prisoners may be difficult to understand or interpret; however, the material almost always specifically references the UCC. The material also may identify parties as being a guarantor, debtor or a secured party and may discuss the filing of liens, financial statements or other documents with the Secretary of State. (Special attention should be given to any mail from the Secretary of State that is received from a prisoner.) Some material may reference the Federal Tax Lien Act of 1966, a Notice of Non-Bona Fide Tax Lien, a Refusal for Cause, or a Bill of Exchange. Although the use of a copyright mark, (i.e., ©) by a prisoner's name is not in and of itself prohibited, it is often included in material in which prisoners are demanding payment from staff for using the copyrighted name and in other material prohibited by this DOM.

Prisoners shall not be permitted to use funds in their institutional account to purchase material prohibited by this DOM. In addition, material prohibited by this DOM shall be rejected in accordance with PD 05.03.118 "Prisoner Mail" if received through the mail for a prisoner or confiscated in accordance with PD 04.07.112 "Prisoner Personal Property" if found in the possession of a prisoner. This includes confiscating such material if presented to staff for notarization or photocopying. (Staff notarizing a document for a prisoner are only authenticating the prisoner's signature and are not responsible for the content of the document; however, it will be necessary for staff to review documents presented for notarization to the extent necessary to ensure that the document is not prohibited under this DOM. If it is prohibited under this DOM, the document is not to be notarized but instead confiscated as indicated above. Material presented for photocopying must similarly be reviewed.) Any questions regarding material prohibited by this DOM and appropriate action to be taken shall be directed to the Administrative Assistant to the Deputy Director of Correctional Facilities Administration.

> The Department is pursuing legislation to put a halt to this fraudulent and harassing activity. The Department of Attorney General has agreed to provide assistance to staff who are the subject of a fraudulent lien filed by a prisoner. Staff may contact the Office of Audit, Internal Affairs and Litigation through their local litigation coordinator if such assistance is needed or if they have questions regarding a UCC claim filed against them by a prisoner.

DOM 2004-8.

On January 1, 2005, DOM 2005-4 superseded DOM 2004-8. DOM 2005-4 contained the same prohibitions as DOM 2004-8.

On June 6, 2005, DOM 2005-4 was superseded by MDOC Policy Directive 05.03.118, ¶ HH 22.[4], which provides in pertinent part that:

> Prisoners are prohibited from receiving mail that is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner. The following pose such risks within a correctional facility under all circumstances and therefore shall be rejected:
>
> * * *
>
> 22. Mail regarding actions that can be taken under the Uniform Commercial Code (UCC). This does not include legal materials which set forth the statute or provide a scholarly legal analysis of the UCC.

Policy Directive 05.03.118, ¶ HH 22. While DOM 2005-4 appears to contain a more expansive prohibition on materials than the policy directive, the MDOC did not renew this memorandum in 2006. *See* MDOC Memorandum from Richard B. Stapleton, Administrator of Office Policy and Hearings (January 10, 2006) ("[t]he 2005 DOMS not superseded by a 2006 DOM are no longer in effect because they have been incorporated into policy directives or are no longer necessary").

---

[4] *See* MDOC Policy Directive, 01.04.110, ¶ N, (the MDOC Policy and Rules Development Division (PRDD) "shall be responsible for ensuring that the contents of a DOM are incorporated into applicable policy directives, as necessary"); *Reynolds v. Harris-Spicer*, No. 1:05-cv-527, 2005 WL 2990486 at *2 (W.D. Mich. Nov. 8, 2005) (noting that MDOC Policy Directive 05.03.118, ¶ HH 22, superceded DOM 2004-8 and DOM 2005-4).

## II.     Plaintiff's Federal claims

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff's complaint consists of nine counts. In Counts I, II and III, plaintiff alleges that DOM 2004-8 violates his right under the First Amendment as applied to the state under the Fourteenth Amendment. In Count I, plaintiff alleges that the memorandum is constitutionally overbroad, because it is "pointedly designed to suppress, prohibit, frustrate, thwart, chill, and intimidate [plaintiff] from reading, acquiring, viewing, possessing, receiving and/or permissibly using the [UCC] laws." Compl. at ¶¶ 42-43. In Count II, plaintiff alleges that DOM 2004-8 "is constitutionally void for vagueness in that it is subject to arbitrary and capricious enforcement due to defendants' loathsome displeasure with [plaintiff's] exercise of the UCC laws, its viewpoint, message, ideas and content." *Id.* at ¶ 54.

In Count III, plaintiff alleges that DOM 2004-8 violates his constitutional rights because he "maintained a fundamentally protected First Amendment right to permissibly exercise and utilize UCC laws, as well as to read, possess review, retain, purchase, and study related UCC tangible materials." *Id.* at ¶ 63. In this regard, plaintiff alleges that he has "been damaged by the serious and substantial infringements against [his] fundamentally protected constitutional rights to

read, research, possess, retain, purchase, acquire, put into practice, and/or permissibly engage in the exercise of UCC laws, its publications or related legal materials associated with the [UCC] laws." *Id.* at ¶ 71.[5]  In Count IV, entitled "42 U.S.C. § 1983 -- Individuals & Entities," plaintiff again alleges that defendants violated his First Amendment rights.  *Id.* at ¶¶ 72-87.

In Count V, plaintiff alleges that "[d]efendants and various governmental officials" interfered with his civil rights in violation of 42 U.S.C. § 1985 by enacting DOM 2004-8.  *Id.* at ¶¶ 88-101.  In Count VI, plaintiff alleges that defendants' violated 42 U.S.C. § 1986 by neglecting to prevent the commission of unconstitutional conspiratorial acts.  *Id.* at ¶¶ 102-110.

In Count VII, plaintiff alleges that the enactment of DOM 2004-8 constituted malicious prosecution pursuant to a Michigan statute, MCL § 600.2907.  *Id.* at ¶¶ 111-17.  In Count VIII, plaintiff alleges that defendants "failed to provide proper and legitimate supervision . . . in the drafting of proposed and/or new and revised Director's Office Memorandums [sic]" which resulted in "neglect, failure and deliberate indifference" and violation of the First Amendment.  *Id.* at ¶¶ 118-27.  In Count IX, plaintiff alleges that defendants engaged in the willful and wanton infliction of

---

[5] It is unclear how plaintiff's right to access the courts includes the right to "put into practice and/or permissibly engage in the exercise of UCC laws."  For example, in *Wilson v. Andison*, No. 2:06-cv-10794, 2006 WL 1007535 (E.D. Mich. April 17, 2006), the court rejected a prisoner's claim that the confiscation of UCC materials violated his constitutional right of access to the courts, concluding that "[b]ecause the materials were intended to help [p]laintiff with commercial matters and not to challenge his conviction or to assert a violation of constitutional rights, [p]laintiff's right of access to the courts was not violated." *Wilson*, 2006 WL 1007535 at *1. The court relied on the Supreme Court's decision in *Lewis v. Casey*, 518 U.S. 343, 355 (1996), which stated that inmates are not guaranteed:

> the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools [the constitution] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

mental and emotional distress causing him to suffer severe mental anguish. *Id.* at ¶¶ 128-35. Finally, in Counts I through V, plaintiff has alleged violations of his right to assemble and engage in free speech as guaranteed by the Michigan Constitution. *See* Mich. Const. 1963, Art. 1, §§ 3, 5.[6]

Plaintiff seeks compensatory damages, punitive damages, injunctive relief to prevent defendants from enforcing DOM 2004-8, and a declaration that DOM 2004-8 is unconstitutional.

### III.     Legal Standard

Defendants have moved for summary judgment pursuant to Fed. Rules Civ. Proc. 56(b). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

---

[6] Mich. Const. 1963 Art. 1, § 3 states that, "[t]he people have a right to assemble, to consult for the common good, to instruct their representatives and to petition the government for redress of grievances." Mich. Const. 1963 Art. 1, § 5 states that "[e]very person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press."

### IV. Plaintiff's First Amendment Claim

#### A. The First Amendment rights of prisoners

It is well established that a prison inmate retains certain First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives. *See Pell v. Procunier*, 417 U.S. 817, 822 (1973). Because prisoners retain these constitutional rights, prison officials must articulate a legitimate reason for interfering with a prisoner's communications. *See Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003), *citing Turner v. Saffley*, 482 U.S. 78 (1987).

#### B. Plaintiff's complaint

The court has a duty to read a pro se plaintiff's complaint indulgently. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F. 2d 1220, 1223-24 (6th Cir. 1987). Pro se litigants, such as plaintiff, "are held to less stringent standards than formal pleadings drafted by lawyers in the sense that a pro se complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.1991). Reading the complaint indulgently and liberally, it appears to the court that all of plaintiff's federal claim arise from a general or facial challenge to the constitutionality of DOM 2004-8 as overly broad, void for vagueness and invalid on its face. *See, e.g.*, Compl. at p. 21 (seeking injunctive relief to prevent enforcement of DOM 2004-8 as "constitutionally void for vagueness and invalid on [its] face"); *Id.* at p. 41 (seeking injunctive and declaratory relief against defendants "to discontinue the execution and enforcement of the unconstitutional DOM 2004-8"); *Id.* at 44-45 (same); *Id.* at 48 (asking the court to "[e]nter a declaratory and injunctive [o]rder affirming that the [d]efendants' usage, execution, encouragement and enforcement of the DOM 2004-8 policy to be [sic] unconstitutional" and a violation of plaintiff's "constitutional rights,

privileges, liberties and immunities").

### C. Plaintiff's constitutional challenge to DOM 2004-8 is moot

Plaintiff's facial challenge to DOM 2004-8 is "the most difficult challenge to mount successfully, since the [plaintiff] must establish that no set of circumstances exists under which [DOM 2004-8] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). However, it is unnecessary for the court to evaluate plaintiff's constitutional challenge to DOM 2004-8, because his challenge is moot.

Article III of the Constitution confines the power of the federal courts to adjudication of "cases" or "controversies." *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997). "Claims become moot 'when the issues presented are no longer 'live' or parties lack a legally cognizable interest in the outcome.'" *Brandywine, Inc. v. City of Richmond, Kentucky*, 359 F.3d 830, 836 (6th Cir. 2004), *quoting County of Los Angeles v. Davis*, 440 U.S. 625, 641 (1978). As the court previously discussed, the challenged policy set forth in DOM 2004-8 expired on December 31, 2004, two months before plaintiff filed suit. DOM 2005-4 set forth the applicable policy when plaintiff filed suit in February 2005. During the pendency of this suit, the MDOC superceded both DOM 2004-8 and DOM 2005-4 by enacting Policy Directive 05.03.118, ¶ HH 22 on June 6, 2005.

There is no controversy for the court to decide because DOM 2004-8 has been superceded by a policy directive. This court "can neither declare unconstitutional nor enjoin the enforcement of a provision that is no longer in effect." *Brandywine, Inc.*, 359 F.3d at 836. *See, generally*, *Seay Outdoor Advertising, Inc. v. City of Mary Esther*, 397 F.3d 943, 947 (11th Cir. 2005) ("[c]onstitutional challenges to statutes are routinely found moot when a statute is amended or repealed").

In *Kentucky Right to Life, Inc.*, the Sixth Circuit explained that a plaintiff's First Amendment challenge to a statute becomes moot when the challenged statute is amended:

> The mootness doctrine, a subset of the Article III justiciability requirements, demands a live case-or-controversy when a federal court decides a case. Legislative repeal or amendment of a challenged statute while a case is pending on appeal usually eliminates this requisite case-or-controversy because a statute must be analyzed by the appellate court in its present form. Applying this principle in the First Amendment context, the Supreme Court has routinely declared moot those claims effectively nullified by statutory amendment pending appeal. Both [*Massachusetts v. Oakes*, 491 U.S. 576 (1989)] and [*Bigelow v. Virginia*, 421 U.S. 809 (1975)] involved First Amendment overbreadth challenges implicit as defenses to criminal prosecution. In each case, the Court refused to reach the First Amendment arguments because legislative amendment of the challenged statute while the case was pending rendered the issue moot. The plurality in *Oakes* emphasized that *Bigelow* "stands for the proposition that overbreadth analysis is inappropriate if the statute being challenged has been amended or repealed." Accordingly, overbreadth challenges to statutes become moot when the challenged language is effectively nullified by subsequent statutory amendment.

*Kentucky Right to Life, Inc.*, 108 F.3d at 644 (citations omitted). Thus, once a challenged statute has been repealed, "the former version [of the statute] cannot chill protected expression in the future." *Oakes*, 491 U.S. at 576.

The First Amendment analysis articulated in *Kentucky Right to Life, Inc.* applies to DOM 2004-8, which has been superceded by a policy directive and no longer exists. Accordingly, plaintiff's First Amendment challenge to DOM 2004-8 is moot, and his federal claims brought pursuant to §§ 1983, 1985 and 1986 should be dismissed.

In reaching this determination, the court is aware of plaintiff's allegations regarding the confiscation of certain documents after he filed suit. In his response, plaintiff included evidence of confiscations which he claims were performed pursuant to "DOM 2004-8/2005-4." *See* Attachments (docket no. 68-2). The alleged confiscations occurred on March 8, 2005 (1 folder

9

containing possible UCC papers); May 2, 2005 (two bags of suspected UCC information); August 1, 2005 (76-pages of UCC material); September 19, 2005 (10-page power of attorney form to be photocopied); October 6, 2005 ("8 pages of directions for Uniform Commercial Code not allowed through the mail per PD 04.07.112");  November 13, 2005 (UCC material including "detailed instructions re: judge, sentence, IRS"); January 29, 2006 ("'confidential disclosure document' from the Patent Trademark Institute of America" described as "patent/trademark applications and related materials").  *See* Attachments (docket no. 68-2).

These alleged confiscations are not relevant to plaintiff's suit.  First, none of the documents were confiscated pursuant to the challenged policy,  DOM 2004-8, which expired on December 31, 2004.  Second, these alleged confiscations could not serve as the basis for plaintiff's complaint, because they occurred after he filed suit in February 2005.  Third, plaintiff's complaint alleges a general or facial constitutional challenge to DOM 2004-8.  He does not allege that DOM 2004-8 was unconstitutional as applied to his particular actions.  Plaintiff's claims regarding these alleged confiscations, which occurred after he filed suit, would be in the nature of an "as applied" challenge to DOM 2004-8.

> Traditionally, a plaintiff's burden in an as-applied challenge is different from that in a facial challenge. In an as-applied challenge, the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional. Therefore, the constitutional inquiry in an as-applied challenge is limited to the plaintiff's particular situation.

*Women's Medical Professional Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir.1997).  Here, plaintiff's complaint does not allege that DOM 2004-8 is unconstitutional as applied to him or that he was injured by the confiscation of any particular document. Even if plaintiff had alleged that these confiscations were unconstitutional, he did not administratively exhaust his claims with respect to

10

these alleged confiscations. *See generally*, 42 U.S.C. § 1997e (a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies).[7]

### V. Plaintiff's state law claims

The remainder of plaintiff's claims against defendants involve alleged violations of Michigan state law. Section 1367 of Title 28 of the United States Code provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). Here, the court exercised its supplemental jurisdiction over plaintiff's state law claims, presumably because those claims were intimately related to the alleged § 1983 violation. The dismissal of plaintiff's federal claim against defendants, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims against this defendant. Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998).

As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, the Court has rejected

---

[7] Furthermore, even if the court construed plaintiff's complaint as challenging the constitutionality of the later memorandum, DOM 2005-8, such a challenge would be moot for the reasons stated above.

plaintiff's federal claims. There is no reason to retain supplemental jurisdiction over plaintiff's state law claims. Accordingly, the court should dismiss all of the state law claims asserted against defendants.

### V.     Recommendation

I respectfully recommend that defendants' motion for summary judgment (docket no. 45) be **GRANTED**.


Dated:  June 19, 2006                         /s/ Hugh W. Brenneman, Jr.
                                              Hugh W. Brenneman, Jr.
                                              United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).